## J. FLETCH WOODWARD v. THE STATE.

CRIMINAL LAW.  *Identification.  When opinions of witnesses competent.* The general rule that opinions of witnesses are not competent testimony, is subject to the well settled exception making them admissable as such, in questions involving personal identity. The impression of the witness must be based upon his knowledge of the person sought to be identified, and while it is not necessary that it should be formed at the time he saw such person, yet, when formed, it must be the result of the recollection of the person seen, connected with the seeing, and not after-acquired information from others.

Authority cited : 1 Greenlf. Ev., ?440.

### FROM WARREN.

Appeal from the Circuit Court.  W. P. HICKER-SON, Judge.

W. J. CLIFT for Woodward.

SAVAGE and SWAFFORD for State.

NICHOLSON, J., delivered the opinion of the Court.

J. Fletch Woodward, Gilbert Flynn and James Flynn were jointly indicted and tried in the Circuit Court of Warren County, the first named for the murder of Enoch Cooksy, and the others for being present, aiding and abetting in the murder. Upon the trial of the cause, Woodward was convicted of murder in the first degree, and sentenced to be hung.

The two Flynns were acquitted. Woodward has appealed to this Court.

Cooksy was a police officer in McMinnville, and, in the discharge of his duty, on the night of the 15th of November, 1873, he had gone to the rear of a bawdy house, to see whether any unlawful conduct was being carried on, when he was shot and instantly killed  Two persons were near enough to see the person who did the killing, and to see him run from the place, but, owing to the darkness of the night, they could not distinguish or identify him. But on his flight from the place of killing, up Depot street, in the town of McMinnville, he passed near a witness named Tanner, who was permitted to give to the jury his impression as to the identity of defendant, Woodward, as the man who ran by him from the scene of the homicide. In the identification of the defendant as the guilty party, the testimony of Tanner was material. It is insisted for the prisoner, that this testimony was erroneously allowed to go to the jury.

The witness, Tanner, states, that, while he was standing in the street, near his door, he heard the shooting his house was 50 or 60 steps from the Medley House, at the back of which the shooting occurred. Immediately after the shooting occurred, some man crossed the fence at the Medley House, and came running up the street. He heard the man cross the fence, and heard him running up the gravel. He could see the bulk of him from the Medley House. He ran

up Depot street, by witness, and passed in 10 or 15 feet of him; he was running fast; he seemed stooped forward. He was running mighty light. Witness said he could hardly hear him. The man had on dark pants and a heavy overcoat, that struck him near his knees. It was rather dark colored, but not so dark as his pants. He was a slim man. Witness says he was not much acquainted with Woodward; has lived within 50 or 60 yards of him for two or three years.

The State asked the witnes, " who he took that to be that he saw just after the shooting, going up the street ?"

This was objected to, and the objection sustained, upon the ground, that the question implies that he took it to be some particular party.

The State then asked witness, " did you have an impression at the time, who that was ?"

This question was objected to and objection over-ruled. It was objected to, because the question was asking for the opinion of the witness as to who it was.

Before the question was answered, defendant asked leave to ask the witness if he knew who it was. The Court decided that the State had the witness, and when it came to defendant's time, he could, in any way legal, test the knowledge or impression of the witness.

Witness then answered: "I could not be positive who it was, but thought it was Mr. Woodward. Right at the time I was not thinking which it was; after

he passed, and I heard about the killing, and thinking of the shape of the man, I thought it was Woodward.

On cross-examination witness said, he never thought who it was until it (he) passed—looked like a dark hat—can't tell what he had on his feet. Heard him scrambling in the gravel when he crossed the fence. "It was after Cooksy was killed; perhaps 20 minutes after, that I first had an impression who it was; then hearing of the threats Woodward had made, and thinking of the shape of the man, my impression was formed."

This evidence went to the jury as competent, without any explanation from the Court as to the mode of determining its ruling and weight. It is insisted for defendant, that this was error.

As a general rule, the opinions of witnesses are not competent testimony. But one of the settled exceptions to the rule is, that, on questions of the identification of persons, the witness may give his opinion, provided he has any knowledge of the person; 1 Greenlf. Ev., §440. The opinion or belief must be based upon this knowledge. It is not necessary that it should be formed at the time the person sought to be identified was seen by the witness; but when formed, it must be the result of the recollection of the person seen, and of the facts connected with the seeing, but not from information derived from others.

In this case it was competent for Tanner to state the facts connected with the person who ran by him, such as his dress and shape, and also to state his im-

pression either at the time or afterwards, as to who the person was, provided the impression rested alone upon the 'facts so observed, and upon knowledge of the person.    But it was made manifest on the cross-examination of the witness, that no impression was made on his mind at the time, as to who it was that ran by him, and that the impression was not made until twenty minutes afterwards, and, then, that it was made from learning that Cooksy had been killed, and that Woodward had made threats against Cooksy.    It is clear, that Woodward would not have been identified by the witness if he had not afterwards heard of the killing and of the threats.    Upon this after-acquired information his opinion was formed.

We are of opinion, that, an opinion so formed was not competent testimony, and that it ought to have been excluded from the jury, leaving them to draw their conclusions from the facts proven by the witness, in connection with the other proof in the cause.

As this error renders a reversal and a new trial proper, we deem it unnecessary to allude to other alleged errors in the record.